**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**


REGINA YANDRISEVITZ,       :           CIVIL ACTION
       Plaintiff,            :
                       :
    v.                   :        No.:   08-1444
                       :
H. T. LYONS, INC.,           :
       Defendant.       :


## <u>MEMORANDUM AND ORDER</u>


**LYNNE A. SITARSKI**                       **DATE:  JULY 22, 2009**
**UNITED STATES MAGISTRATE JUDGE**

       Plaintiff Regina Yandrisevitz ("Plaintiff") brings this action against her former employer, defendant H.T. Lyons, Inc. ("Defendant"), claiming that Defendant discriminated against her on the basis of her gender, and permitted a co-worker to sexually harass her in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e *et seq*., and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. §§951-963.[1] Plaintiff further contends that Defendant unlawfully interfered with her rights under the Family Medical Leave Act ("FMLA"), 29 U.S.C.A. § 2601 *et seq*., and retaliated against her for taking FMLA leave to care for her adult son.

       Presently before the Court is Defendant's Motion for Summary Judgment, Plaintiff's Response, and Defendant's Reply thereto. For the reasons set forth herein, Defendant's motion for Summary Judgment is **GRANTED.**

---

[1] Plaintiff initially filed this action on February 1, 2007, in the Lehigh County Court of Common Pleas. Defendant removed this action to this Court on March 26, 2008.

# I.    BACKGROUND

Viewing the evidence and making all reasonable inferences in the light most favorable to Plaintiff, the non-moving party, the relevant facts are as follows:

Plaintiff was employed by Defendant from March 11, 1999 until October 13, 2005. She was hired as a temporary employee in the purchasing department, but was subsequently promoted to payroll coordinator, and then to construction coordinator. As construction coordinator, Plaintiff was assigned to a construction project known as the "Olympus Project." Beginning in March 2005, Plaintiff worked "on site" at the Olympus project and was supervised by Patrick Kelly ("Kelly"), a senior project manager.

## A.    Facts Pertaining to Plaintiff's Title VII/PHRA Claims

While on the Olympus Project, Plaintiff shared a trailer with a co-employee named Ryan Regec ("Regec"). Plaintiff initially shared the work trailer with four other employees, but beginning in June 2005, Plaintiff shared the trailer only with Regec and her supervisor Kelly.

While working in the trailer, Plaintiff alleges that Regec intentionally harassed her due to her gender. Regec mentioned having a "talking stick" to resolve disputes three to four times between March and May 2005, and showed Plaintiff the stick at least once. Pl. Dep. at 320.[2] Regec locked his computer so that Plaintiff was unable to use it to complete a project. *Id*. at 259-67. Regec had workers place boxes in Plaintiff's work area. *Id*. at 290-96. Regec did not follow Kelly's instructions to replace a fuse in the trailer, leading to intermittent power loss on Plaintiff's computer. *Id*. at 272-82. Regec told Plaintiff he had "anger issues" and martial arts

---

[2]   Plaintiff described the item as a stick such as the type used to stir paint, and might have had "talking stick" written on it. Pl. Dep. at 314. Plaintiff explained that Regec used the talking stick for resolving disputes. *Id*. at 315-22. Plaintiff testified that on certain occasions "when the conversations got too heated, we would talk to the stick" - presumably instead of arguing with each other. *Id*. at 315. Plaintiff claims that Regec's having this stick contributed to her feeling that she worked in a hostile work environment due to Regec's "anger issues." *Id*. at 321-22.

training.  *Id*. at 301-08.  Regec also hid Plaintiff's purse for three hours and took cigarettes from the purse, *id*. at 285-88, and hid construction drawings Plaintiff needed.  *Id*. at 259-60.

Plaintiff reported Regec's behavior to her immediate supervisor, Patrick Kelly, and requested that he meet with Regec and her.  Kelly instructed Plaintiff to inform Regec that she felt harassed and that she would file a complaint against Regec if the inappropriate behavior continued.  *Id*. at 261-262.  Plaintiff acknowledges that she was aware of the protocol in place for filing a sexual harassment complaint, but chose not to do so during the time she shared the trailer with Regec.  *Id*. at 377-84.  Plaintiff states that she believed filing a complaint would make her "immediately look like a baby" due to the fact that she was the only female in the construction trailer.  *Id*. at 382.  Plaintiff also feared that filing a complaint would jeopardize her position on the Olympus Project.  *Id*. at 382-83.

**B.      Facts Pertaining to Plaintiff's FMLA Claims**

Plaintiff took a leave of absence from her employment with Defendant from June 23, 2005 until September 26, 2005, to care for her adult son who suffers from "bipolar mania with schizophrenic episodes."  Pl. Dep. at 136.  Her son's mental health issues had become so severe that he was involuntarily committed for forty-five days in September 2004.  *Id*. at 135-36, 150-51.

Beginning in March 2005, Plaintiff frequently needed to arrive to work late or miss work altogether as a result of her son's failure to take his prescribed medication.  *Id*. at 76-84.  Without proper medication, Plaintiff believed her son was a "threat to himself."  *Id*. at 76.  Plaintiff's son would often disappear from Plaintiff's home, which required Plaintiff and her husband to look for him, and sometimes retrieve him from police custody prior to coming to work.  *Id.* at 76-84.

By June 2005, Plaintiff had used almost all of her allotted five personal days and fifteen vacation days to care for her son. *Id*. at 79-85. On June 20, 2005, Plaintiff met with Rick Perosa ("Perosa"), Defendant's Chief Executive Officer and President. At this meeting, Perosa told Plaintiff that he wanted to remove the "burden" of coming to work while caring for her son. *Id*. at 93. Perosa also stated that he "would hate to have [Plaintiff] use up all her [vacation and personal] days and then have to lay [Plaintiff] off." *Id*. According to Perosa, "business was slow" and "it would be a perfect time" to take a 12-week FMLA leave of absence. *Id*. at 90-97.

Plaintiff began FMLA leave on June 23, 2005. Plaintiff received the corresponding FMLA paperwork on June 24, 2005. Also on June 24, 2005, the police discovered Plaintiff's son in the midst of a manic episode. *Id*. at 124. The police called Plaintiff and her husband to come get their son. *Id*. When Plaintiff's son would not return home with his parents voluntarily, the police transported him to the hospital. *Id.* at 124-25. Plaintiff's son was released from the hospital on June 27, 2005, and was scheduled to begin outpatient therapy the next day. *Id*. at 126-128, 131.

Despite initially refusing to do so, Plaintiff's son eventually attended the outpatient therapy and his mental health improved over time. *Id*. at 126-28, 151. On July 5, 2005, Plaintiff contacted a co-worker and indicated that her son was "doing much better" and that an anti-depressant "helped tremendously." Email from Plaintiff to Mary Lahouchak (July 5, 2005) (Def.'s Mot. Summ. J. Ex. G). Beginning in mid-July, Plaintiff's son was able to return to part-time employment doing construction work. Pl. Dep. at 155-56. From mid-August until the end of Plaintiff's leave, Plaintiff's son worked in a warehouse. *Id*. at 156.

In July 2005, Plaintiff contacted Defendant and indicated that she felt able to return to work. *Id*. at 174. Plaintiff spoke with Perosa who explained that the company was "in a lull"

and that Plaintiff should "just take the time and spend it with [her] family." *Id*. at 175. Plaintiff was never asked to furnish a report as to her status and intent to return to work. *Id*. at 174.

In "the middle of August" 2005, Plaintiff contacted Perosa seeking permission to extend her leave beyond the twelve weeks provided by FMLA in order to care for her ailing mother and father. *Id*. at 176.[3] Perosa allowed Plaintiff to extend her leave and did not require Plaintiff to furnish any medical documentation verifying her need for additional leave. *Id*. at 176-77.

On September 9, 2005, while Plaintiff was still on FMLA leave, Perosa informed Plaintiff that her construction coordinator job had been eliminated, and that the only available position with Defendant was as a receptionist. *Id*. at 184-85. Perosa also told Plaintiff that her pay would not be reduced if she accepted the receptionist position, and she would likely be given the next construction coordinator position that became available. *Id*. at 193-94.

Plaintiff accepted the receptionist position and returned from her FMLA leave on September 26, 2005. *Id*. at 194. Plaintiff admits that she believed the receptionist job was "beneath" her and that she had a bad attitude. *Id*. at 196. At some point thereafter, Plaintiff spoke with Defendant's human resources department to ask what severance might be available. *Id*. at 196-97. "Around the 9th or 10th of October," Plaintiff also met with human resources to discuss Regec's earlier behavior at the Olympus job site. *Id*. at 350-52.

On October 13, 2005, Perosa and a human resources representative presented Plaintiff with a severance package. *Id*. at 200. During this meeting, Plaintiff was told that she could "collect her things and go."[4] *Id*. at 204.

---

[3] Plaintiff's mother had terminal cancer, and her father had recently undergone bypass surgery. Pl. Dep. at 176.

[4] Even though Plaintiff's summary judgment response states that Plaintiff "decided to leave the company" and discusses constructive discharge (Pl.'s Mem. Law Opp'n Def.'s Mot. Summ. J. at 4), the Court will assume that Plaintiff stands by her Complaint allegation that she was terminated on October 13, 2005. Compl. at 6, ¶ 33. Because this Court must view all evidence in the light most favorable to the non-moving party, and Defendant

On November 14, 2005, Plaintiff filed "Charges of Discrimination" with the EEOC. Plaintiff received a Notice of Right to Sue on March 22, 2007. The instant action followed.

## II.     PLAINTIFF'S CLAIMS

### A.     Title VII/PHRA Claim

Plaintiff's complaint does not explicitly state the nature of her Title VII claim. However, her response to Defendant's motion for summary judgment clarifies that she asserts a "hostile work environment gender based harassment" claim. Pl.'s Mem. Law Opp'n Def.'s Mot. Summ. J. at 9. Plaintiff alleges that Defendant was aware of Regec's intentional gender based harassment but allowed it to "continue unabated." *Id* at 8.

Defendant moves for summary judgment on this claim, arguing that there is no support for Plaintiff's contention that Regec's conduct was motivated by gender. Defendant notes that Plaintiff concedes that Regec was difficult to get along with for employees of both sexes. Def.'s Mot. Summ. J. at 14 n.5 (citing Pl. Dep. at 335); Plaintiff also acknowledges that Regec was occasionally loud and confrontational with male employees. *Id.* (citing Pl. Dep. at 328-35).

Defendant next argues that "even if evidence existed from which a jury might conclude that Mr. Regec harassed Plaintiff because of her sex," Regec's conduct was neither severe nor pervasive. Def.'s Mot. Summ. J. at 13. Defendant argues that Plaintiff "admits" Regec did not touch her, did not make physical threats against her, did not act sexually towards her, and did not threaten to harm her. *Id.* (citing Pl. Dep. at 305-07, 329-30, 396-97). Defendant also emphasizes that Plaintiff testified that she liked her job, despite Regec's behavior. *Id.* at 17

---

conceded for purposes of its summary judgment motion that Plaintiff was discharged (Def.'s Mot. Summ. J. at 5 n.2), this Court will view Plaintiff's separation from Defendant as a termination.

(citing Pl. Dep. at 336).

Defendant concedes that Regec's behavior was "immature", "annoying" and "obnoxious," but contends that it was not conduct severe enough to change the terms and conditions of Plaintiff's employment *Id*. at 13-15. Accordingly, Defendant argues that the totality of the circumstances do not demonstrate a sufficiently severe or pervasive work environment to constitute sexual harassment.

Plaintiff's brief in response to Defendant's summary judgment motion offers no support for her allegation that Regec's conduct was severe and pervasive. Plaintiff cites no precedent where similar conduct was found to be severe and pervasive by any court. Plaintiff also cites no evidence (other than her own belief) that Regec's conduct was in any way gender-related. In response to Defendant's arguments, Plaintiff claims that she was "targeted" for discrimination because she was the only female construction coordinator, but plaintiff cites no competent record evidence that directly or indirectly supports this claim. Pl.'s Mem. Law Opp'n Def.'s Mot. Summ. J. at 8. Plaintiff argues that "[i]f and when a woman is in a prominent position in the workplace, there is no better way to get rid of that woman than to allow this kind of harassment to continue unabated." *Id*.

**B.     FMLA Claims**

Plaintiff alleges violations of both the interference and retaliation provisions of the FMLA. Plaintiff's interference claim is based on her belief that Defendant unlawfully interfered with her rights under the FMLA by transferring her to a receptionist position, without any reduction in pay, upon her return from FMLA leave. Plaintiff's FMLA retaliation claim is based on her belief that she was demoted and then terminated by Defendants for utilizing FMLA leave.

Defendant moves for summary judgment on plaintiff's FMLA interference claim.

Defendant contends that "caselaw and FMLA regulations underscore" that an employer's failure to return an employee to an eliminated position after taking FMLA leave constitutes a retaliation, not an interference claim. Def.'s Reply in Supp. of Mot. for Summ. J. at 3-4 (citing *Schriner v. Sysco Food Service of Cent. Pa.*, 2005 WL 1498497 at *8 (M.D. Pa. June 23, 2005) ("The alleged failure to restore Plaintiff happened after his FMLA leave and cannot be said to have interfered with Plaintiff taking FMLA leave. To provide otherwise would result in an inconsistent, if not wholly illogical, result"); (citing *Dressler v. Cmty. Serv. Commc'ns,,* 275 F. Supp. 2d 17, 25 (D. Me. 2003), *aff'd,* 115 F. App'x. 452 (1st Cir. 2004) (An interference claim based on the plaintiff's position elimination during FMLA leave is not truly "a § 2615(a) interference claim, only a retaliation claim masquerading as one.").

Defendant also argues that Plaintiff's interference claim is based upon the mistaken assumption that Plaintiff has an absolute right to job restoration upon return from FMLA leave. Defendant contends that if a change in position would have occurred regardless of whether employee took leave, the FMLA does not protect the employee against such change. Defendant further notes that Plaintiff does not dispute that her position would have been eliminated even if she had not taken leave, and does not dispute that there was no available construction coordinator position at the time of Plaintiff's return. Accordingly, Defendant argues that summary judgment is appropriate even if Plaintiff is found to have asserted a proper FMLA interference claim.[5]

Defendant also moves for summary judgment on Plaintiff's FMLA retaliation claim, arguing that Plaintiff cannot establish a case of FMLA retaliation because she "cannot point to

---

[5] Defendant also argues that it is entitled to summary judgment on all FMLA claims because Plaintiff was not entitled to FMLA leave, given that her son was capable of self-care. This claim is disingenuous considering the facts in this case, where defendants encouraged Plaintiff to take FMLA leave, and then to extend it. In any event, it is not necessary to address this argument because summary judgment is appropriate for the reasons discussed *infra*.

evidence showing a causal relationship between her FMLA leave . . . and her subsequent transfer and discharge." Def.'s Mot. Summ. J. at 17. Defendant alleges that Plaintiff's claims of a causal connection between taking FMLA leave and her demotion and subsequent termination are based solely on Plaintiff's own speculation. To support this proposition, Defendant cites the following portion of Plaintiff's deposition testimony (Pl. Dep. at 212-13):

> Q.  So when you say that you believe there's a link between you taking leave, your expressing your opinion about your rights being violated and your being terminated, is it accurate to say that you are – you are speculating about this link. You don't have any evidence or information-
> A.  Yes.
> Q.  - to show it?
> A.  I'm speculating.
> Q.  You said you feel that you were demoted, and I assume you mean from construction coordinator to receptionist, correct?
> A.  Yes.
> Q.  Are you claiming in this case that you were demoted in retaliation for taking FMLA leave or asserting FMLA rights?
> A.  Yes.
> Q.  And are you basing that claim also on speculation?
> A.  Yes.
> Q.  You have no evidence or information to prove that
> A.  No.

Defendant also argues that Plaintiff cannot establish that its reasons for demoting and terminating Plaintiff were pretextual. Defendant notes that Plaintiff does not contest that her construction coordinator position was terminated due to lack of work. Def.'s Mot. Summ. J. at 18 (citing Pl. Dep. at 191-92). Defendant avers that "Plaintiff has no information to suggest that there were any open positions for which she was qualified at the time her leave ended." *Id*. Defendant also denies that it possessed any retaliatory motive, as it "defies belief for an employer to suggest and grant leave to an employee, then grant the employee additional leave, and then turn around and fire that employee for taking leave." *Id*. at 17 (parenthesis omitted). Similarly, Defendant argues that "it defies logic" for it to give Plaintiff a receptionist position

without a reduction in pay or benefits when the company was not under any legal obligation to do so, and then fire that same employee for exercising FMLA rights. *Id*. at 19.

Defendant therefore argues that because no genuine dispute exists as to Plaintiff's position being eliminated due to legitimate business reasons, Plaintiff cannot sustain an FMLA retaliation claim.

## III.    DISCUSSION

Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the Court must view the evidence, and make all reasonable inferences from the evidence, in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 252-55 (1986). Whenever a factual issue arises which cannot be resolved without a credibility determination, at this stage the Court must credit the non-moving party's evidence over that presented by the moving party. *Liberty Lobby*, 477 U.S. at 255. The moving party bears the initial burden of proving that there is no genuine issue of material fact in dispute. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 585 n.10 (1986).

Once the moving party carries this burden, the non-moving party must "come forward with specific facts showing there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)). The non-moving party must present something more than mere allegations, general denials, vague statements, or suspicions. *Trap Rock Indus. v. Local* 825, 982 F.2d 884, 890 (3d Cir. 1992); *Fireman's Ins. Co. of Newark v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982). Instead, the non-moving party must present specific facts and "affirmative evidence in order to defeat a properly supported motion for summary judgment." *Liberty Lobby*, 477 U.S.

at 257.  A proper motion for summary judgment will not be defeated by merely colorable or insignificantly probative evidence.  *See id.* at 249-50.

If the non-moving party has the burden of proof at trial, then that party must establish the existence of each element on which it bears the burden.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

## A.      Title VII/PHRA Claims

### 1.      Legal Framework

PHRA and Title VII claims are analyzed under the same legal standard.  *Wilkerson v. New Media Tech. Charter Sch.*, 522 F.3d 315, 318-19 (3d Cir. 2008), *Atkinson v. LaFayette Coll.*, 460 F .3d 447, 454 (3d Cir. 2006).  Accordingly, to state a claim for a hostile work environment sexual harassment under either statute, a plaintiff must establish that: (1) she suffered intentional discrimination because of her membership in a protected class; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected her; (4) the discrimination would have detrimentally affected a reasonable person in the same position; and (5) *respondeat superior* liability is appropriate.  *Andreoli v. Gates*, 482 F.3d 641, 643 (3d Cir. 2007), *Weston v. Pennsylvania*, 251 F.3d 420, 426 (3d Cir. 2001).[6]

_____

[6]      Plaintiff argues that a "mixed-motives" analysis is appropriate in the instant gender harassment claim.  Pl.'s Mem. Law Opp'n Def.'s Mot. Summ. J at 6 (citing *Desert Palace v. Costa*, 539 U.S. 90, 98 (2003)).  Plaintiff argues that she need not produce direct evidence of discrimination to survive summary judgment.

Generally, a Title VII plaintiff may state a claim for discrimination under either the pretext theory set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), or the mixed-motive theory set forth in *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989), under which a plaintiff may show that an employment decision was made based on both legitimate and illegitimate reasons.  *Makky v. Chertoff*, 541 U.S. 205, 213 (3d Cir. 2008).

It is unclear whether a mixed-motives analysis is appropriate at the summary judgment phase.  The precise issue in *Desert Palace* was "whether a plaintiff must present direct evidence of discrimination in order to obtain a mixed-motive instruction under Title VII of the Civil Rights Act of 1964. . . ."  *Desert Palace*, 539 U.S. at  92.  The Third Circuit has explained that the "mixed motive" standard is normally used in instructing juries, and may not be appropriately considered at the summary judgment phase of judicial proceedings.  *Houser v. Carpenter Tech. Corp.*, 216 F. App'x. 263, 265 (3d Cir 2007) ("even if a mixed motive analysis were appropriate at the summary judgment stage, which our court has not addressed, [plaintiff] cannot succeed under a mixed motives approach because

Where the alleged harasser is a co-worker, an employer will be liable if it is "negligent or reckless in failing to train, discipline, fire or take remedial action upon notice of harassment." *Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 26 (3d Cir. 1997) (citing *Bouton v. BMW of N. Am., 29 F.3d 103, 106 (3d Cir. 1994)).* An employer is negligent if it "knew or should have known about the harassment, but failed to take prompt and adequate remedial action." *Jensen v. Potter*, 435 F.3d 444, 453 (3d Cir. 2006), *overruled in part on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006).

A Title VII plaintiff does not have to show that the alleged harassing conduct was sexual in nature. Title VII prohibits not only blatantly sexual comments and behaviors, but also non-sexual, yet gender-based, conduct. *Durham Life Ins. Co. v. Evans,* 166 F.3d 139, 148 (3d Cir. 1999). If the alleged discriminatory treatment is "not sexual by [its] very nature," a reviewing court is obliged to engage in a more fact intensive analysis than cases where, for example, female employees have been exposed to pornography or sexual propositions. *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1482 n. 3 (3d Cir.1990), *see also Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 715 (3d Cir. 1997) (citing *West v. Philadelphia Elec. Co.*, 45 F.3d 744, 756 (3d Cir. 1995) (the Third Circuit has "precluded an individualized incident-by-incident approach" to determining whether a working environment is sexually hostile). In conducting its review, the court must determine whether the plaintiff has demonstrated that gender was "a substantial factor" in the harassment, and whether the plaintiff established that she would not

---

[plaintiff] points to no evidence that would lead us to conclude that age played any role in his termination").

    In any event, even if a mixed-motives analysis is appropriate at the summary judgment phase of a Title VII case, it is not applicable to the instant hostile work environment claim. *See, e.g., Stacks v. Sw. Bell Yellow Pages,* 27 F.3d 1316, 1326 (8th Cir. 1994) ("The mixed-motives analysis is inapplicable to a hostile work environment claim"). Instead, "the [mixed motives] analysis was designed for a challenge to an adverse employment decision in which both legitimate and illegitimate considerations played a part" and "an employer could never have a legitimate reason for creating a hostile work environment." *Id*. (citing *Price Waterhouse*, 490 U.S. at 247).

have been treated in the same manner if she were male. *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1083-84 (3d Cir. 1996)

However, a plaintiff cannot recover for all conduct that is "merely offensive." *Harris v. Forklift Sys.,* 510 U.S. 17, 21 (1993), s*ee also Meritor Savings Bank, FSB, v. Vinson*, 477 U.S. 57, 67 (1986). As explained by the Supreme Court, Title VII is not a general civility code, and does not prohibit genuine but innocuous differences in the ways men and women routinely interact with members of their own or the opposite sex. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). Instead, an employer violates Title VII "when the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris*, 510 U.S. at 21. The discriminatory conduct must be so extreme as to amount to a change in the terms and conditions of employment. *See Caver v. City of Trenton*, 420 F.3d 243, 262 (3d Cir. 2005). In other words, "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher*, 524 U.S. at 788 (citing *Oncale v. Sundowner Offshore Serv.,* 523 U.S. 75, 81 (1998)).

## 2. Summary Judgment is Appropriate

Plaintiff has not demonstrated that a genuine issue of material fact exists as to whether Defendant illegally subjected her to hostile work environment sexual harassment. Plaintiff has not come forward with any competent record evidence that would support her contention that Regec's admittedly "annoying" and "immature" behavior was directed to her solely because of her sex. Indeed, Plaintiff has acknowledged that other co-workers were subjected to Regec's sophomoric behavior. Plaintiff cannot rest on bald allegations to defeat summary judgment, she

must come forward with affirmative evidence, in the form of record facts, to support her claim. *See Liberty Lobby,* 477 U.S. at 257; *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir. 1989).

Even if Plaintiff had come forward with facts to support her claim that Regec's conduct towards her was based on gender rather than a generally hostile disposition towards co-workers of all sexes, Plaintiff has failed to establish that Regec's conduct was sufficiently severe or pervasive as to alter the conditions of her employment.

A reviewing court must examine the totality of the circumstances when determining whether the alleged harassment is sufficiently severe or pervasive to constitute a hostile work environment. *Andrews*, 895 F.2d 1469 at 1482. The Supreme Court has "made it clear that conduct must be extreme to amount to a change in the terms and conditions of employment." *Faragher*, 524 U.S. at 788. Factors to consider include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23.

Taken in the light most favorable to Plaintiff, the facts of record are insufficient to support a conclusion that Regec's conduct was sufficiently pervasive to support Plaintiff's hostile work environment claim. Plaintiff testified that Regec discussed a talking stick "three or four times."[7] Pl. Dep. at 320. Plaintiff recalled Regec mentioning his anger issues "once or

---

[7] I fail to see how Regec's occasional mention of a "talking stick" could objectively be viewed as offensive or harassing. In many Native American cultures, a "talking stick" is a tool used when a tribal council meeting is called. It allows all council members to present their point of view. The talking stick is passed from person to person as they speak, and only the person holding the stick is allowed to talk during that time period. First People, Native American Legends: Traditional Talking Stick, http://www.firstpeople.us/FP-Html-Legends/TraditionalTalkingStick-Unknown.html (last visited July 15, 2009). Thus, a "talking stick" is generally understood to be a tool that facilitates communication, mutual respect, and the orderly exchange of ideas. Regec's mention of such an item can hardly be viewed as objectively offensive or harassing. *See Harris v. Forklift Sys.,* 510 U.S. 17,

twice," and only in the context of discussing Plaintiff's son's own anger issues. *Id*. at 304.

Plaintiff testified that Regec once hid her purse for three hours, *id*. at 286, and that the boxes

were placed in her work area for a period of just five minutes. *Id*. at 291. The only conduct that

Plaintiff testified to have been especially pervasive was Regec's discussing martial arts training.

However, Plaintiff also testified that Regec typically discussed such training when the two male

foremen were in the trailer. Pl. Dep. at 301-02 ("He spoke about it a lot. [Regec] would speak

about – you know, Jeff and Gerry would be in the trailer too. And we would bring up his martial

arts training.").

Beyond the lack of pervasiveness, few (if any) of the incidents Plaintiff describes

reasonably could be construed as "severe." None of Regec's alleged conduct was sexual in

nature. Plaintiff testified that despite Regec's mention of a talking stick, anger issues, and

martial arts training, Regec never actually threatened her with violence or threatened to actually

harm her. *Id*. at 306. Regec's other alleged actions (hiding various items, stealing cigarettes,

failing to purchase a fuse, preventing access to his computer, and having boxes placed in front of

Plaintiff's desk) were certainly unprofessional and probably annoying, but not so extreme as to

amount to a change in the terms and conditions of Plaintiff's employment. In fact, Plaintiff

testified that she liked working at the Olympus project, that she wanted to return on-site to the

Olympus project after returning from FMLA leave, and that she felt she could handle her

interactions with Regec without support from management. *Id*. at 336.

Regec's conduct may have been unprofessional, and Plaintiff may have been annoyed by

his immature behavior. Nevertheless, no reasonable juror could conclude that the conduct was

---

21-22 (1986) (to fall within the purview of Title VII, the conduct in question must be severe and pervasive enough to create an "objectively hostile or abusive work environment-an environment that a reasonable person would find hostile-and an environment the victim-employee subjectively perceives as abusive or hostile.").

so severe or pervasive that it altered the conditions of Plaintiff's employment, and thus created an abusive environment. Accordingly, it is not actionable. Defendant's motion is granted as to Plaintiff's Title VII and PHRA claims.

### B.   FMLA Claims

The Third Circuit has interpreted the FMLA as containing "two relatively distinct types of provisions:" (1) "interference" provisions, which set floors for employer conduct; and (2) "retaliation" provisions, which prohibit employers from discriminating against employees for exercising their FMLA rights. *Callison v. City of Philadelphia*, 430 F.3d 117, 119 (3d Cir. 2005). Plaintiff alleges both such claims.

### 1.   FMLA Interference Claim

To establish an FMLA interference claim, "the employee only needs to show that he was entitled to benefits under the FMLA and that he was denied them." *Sommer v. Vanguard Group*, 461 F.3d 397, 399 (3d Cir. 2006). "Under this theory, the employee need not show that he was treated differently than others and the employer cannot justify its actions by establishing a legitimate business purpose for its decision." *Id*. "An interference action is not about discrimination, it is only about whether the employer provided the employee with the entitlements guaranteed by the FMLA." *Id*. Because a FMLA interference claim is not about discrimination, a *McDonnell-Douglas* burden-shifting analysis is not required. *Id*.

The FMLA provides, in relevant part, that "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period . . . in order to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition." 29 U.S.C.A. § 2612(a)(1)(C). The term "son or daughter" means a biological, adopted, or foster child, a stepchild, a legal ward, or a child of a person standing in loco parentis,

who is . . . 18 years of age or older and incapable of self-care because of a mental or physical disability. 29 U.S.C.A. § 2611(12)(B). Following a qualified leave, an employee is entitled to return to the same or an alternate position with equivalent pay and benefits. 29 U.S.C.A. § 2614(a)(1); 29 C.F.R. § 825.100(c).

Nevertheless, this right to reinstatement is qualified by a statutory directive that it does not entitle an employee to a right, benefit or position to which the employee would not "have been entitled had the employee not taken the leave." 29 U.S.C.A. § 2614(a)(3)(B). Thus, for example, if an employee is discharged during or at the end of a protected leave for a reason unrelated to the leave, there is no right to reinstatement. 29 C.F.R. § 825.216(a)(1), *see also Windfelder v. The May Dep't Stores Co.*, 93 F. App'x. 351, 355 (3d Cir. 2004) (An employer is not required to suspend its termination proceedings just because the employee requests medical leave. "A contrary holding might impede employers from permissible terminations and encourage employees aware of an impending termination to attempt to create their own 'severance package.' ").

In the instant action, Plaintiff claims that Defendant interfered with her FMLA rights by not restoring her to her previous position after returning from FMLA leave.

I conclude that Plaintiff's FMLA interference claim is more appropriately characterized as a retaliation claim. The Third Circuit addressed a similar situation in *Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135 (3d Cir.2004). Like the instant case, the plaintiff in *Conoshenti* claimed that his taking FMLA leave was used by the employer as a negative factor in its decision to discharge him. *Conoshenti*, 364 F.3d at 146-47. The Third Circuit addressed this claim as a retaliation claim and not as an interference claim. *Id*. at 146-48 ("Even though 29 C.F.R. § 825.220(c) appears to be an implementation of the "interference" provisions of the FMLA, its

text unambiguously speaks in terms of "discrimination" and "retaliation," and we shall, of course, apply it in a manner consistent with that text"), *see also Whitman v. Proconex,* 2009 WL 141847 at *7 (E.D. Pa. Jan. 20, 2009) ("where an employee is fired after returning from leave, the employee may only bring an interference claim based upon a failure to reinstate if the employer cites only factors predating the employee's return to work to justify the adverse action").

Nevertheless, it is not necessary for this court to determine whether Plaintiff's interference claim should more accurately be characterized as a retaliation claim in disguise, as her interference claim fails on its merits.

The right to reinstatement is not absolute: "[T]he FMLA does not provide employees with a right against termination for a reason other than interference with rights under the FMLA." *Sarnowski v. Air Brooke Limousine,* 510 F.3d 398, 403 (3d Cir. 2007) (citing 29 U.S.C.A. § 2614(a)(3)(B)); *see also Conoshenti*, 364 F.3d at 141 ("[I]f an employee is discharged during or at the end of a protected leave for a reason unrelated to the leave, there is no right to reinstatement.")*, Moorer v. Baptist Mem'l Health Care Sys*., 398 F.3d 469, 488 (6th Cir.2005) ("An employee lawfully may be dismissed, preventing him from exercising his statutory rights to FMLA leave or reinstatement, but only if the dismissal would have occurred regardless of the employee's request for or taking of FMLA leave."), *Strickland v. Water Works & Sewer Bd*., 239 F.3d 1199, 1208 (11th Cir. 2001) ("[I]f an employer can show that it refused to reinstate the employee for a reason wholly unrelated to the FMLA leave, the employer is not liable.").

Therefore, an employee cannot prevail on her interference claim if the employer "can establish that it terminated [the employee] for a reason unrelated to [her] ... exercise [of her]

rights under the FMLA." *Sarnowski*, 510 F.3d at 403; *see also* 29 C.F.R. § 825.216(a) ("An employer must be able to show that an employee would not otherwise have been employed at the time reinstatement is requested in order to deny restoration to employment.").

Plaintiff does not dispute Defendant's business reasons for eliminating her position. Indeed, Plaintiff testified that she knew that work was slow, that she feared being laid off prior to taking FMLA leave, and that she saw records demonstrating that Defendant was losing money. Pl. Dep. at 93-97, 195. Plaintiff also acknowledges that she has no evidence that there were any open positions for which she was qualified at the conclusion of her leave. *Id.* at 191.

In sum, Plaintiff has not come forward with any evidence that her position would not have been eliminated had she not taken FMLA leave, or supplied this Court with any evidence other than her own speculation that her taking FMLA leave had any bearing on her transfer to the receptionist position and subsequent termination.

Accordingly, summary judgment is appropriate as to Plaintiff's interference claim.[8]

---

[8] Plaintiff states in her Response that "the bottom line" is that her job status began to deteriorate rapidly after she returned from FMLA leave and thus Defendant interfered with her FMLA rights. Pl.'s Mem. Law Opp'n Def.'s Mot. Summ. J. at 10. Nevertheless, her Complaint appears to assert an interference claim based on Defendant's failure to grant her intermittent leave prior to taking FMLA leave. Compl. at 10. Such a claim would also fail.

In her Complaint, Plaintiff alleges that she was denied her right to take intermittent leave in violation of 29 U.S.C.A. § 2612. Under this statute, an employee may take intermittent leave to care for a family member when "medically necessary." 29 U.S.C.A. § 2612(b)(1). More explicitly, the Supreme Court instructs that FMLA leave "must be granted" if "medically necessary, on an intermittent or part-time basis." *Ragsdale v. Wolverine World Wide,* 535 U.S. 81, 86 (2002); see also 29 C.F.R. § 825.203.

Nevertheless, the FMLA does not require that an employer provide an employee who needs intermittent leave with a more accommodating position, nor does it require that the employer create a new position to accommodate the employee. If an employee requests intermittent leave, or leave on a reduced leave schedule to care for a family member, "the employer may require such employee to transfer temporarily to an available alternative position offered by the employer for which the employee is qualified and that: (A) has equivalent pay and benefits; and (B) better accommodates recurring periods of leave than the regular employment position of the employee." 29 U.S.C.A. § 2612(b)(2).

Plaintiff does not dispute that she was offered the chance to work as a part-time receptionist at the same pay and benefits prior to taking FMLA leave. Pl. Dep. at 98-99. Therefore, an interference claim based on failure to grant intermittent leave would also fail.

## 2.    FMLA Retaliation Claim

Where a plaintiff asserts a discrimination/retaliation claim, courts look to the legal framework established for Title VII claims.  Where, as here, there is only indirect evidence of a violation of the FMLA, courts in the Third Circuit apply the *McDonnell Douglas* burden-shifting framework.  *See, e.g., Coppa v. Am. Soc'y for Testing Materials*, 2005 WL 1124180 (E.D. Pa. May 11, 2005).  Under this paradigm, a plaintiff must first establish a *prima facie* case of retaliation by showing: (1) she took FMLA leave; (2) she suffered an adverse employment action; and (3) there was a causal connection between her leave and the adverse employment action.  *Conoshenti*, 364 F.3d at 146.

If a plaintiff establishes a *prima facie* case, a rebuttable presumption of discrimination arises, and the burden shifts to the employer to articulate a legitimate non-discriminatory reason for the adverse employment action.  If the employer meets this burden of production, the plaintiff must present evidence that the employer's proffered reason for the adverse action was a pretext for retaliating against the employee for taking FMLA leave.  *See, e.g., Baltuskonis v. U.S. Airways*, *Inc*., 60 F. Supp. 2d 445, 448 (E.D. Pa. 1999).

As described above, Defendant argues that there is no genuine issue regarding a causal relationship between Plaintiff's taking FMLA leave and any adverse employment action, and that there is no genuine issue as to its legitimate business reasons for terminating Plaintiff.

I find Defendant's argument persuasive, as Plaintiff's retaliation claim fails because of her failure to show causation and pretext.  As discussed above, the non-moving party is required to "present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Liberty Lobby*, 477 U.S. at 257.  If the non-moving party has the burden of proof at trial, then that party must establish the existence of each element on which it bears the burden.

*Celotex*, 477 U.S. 322-23.

Plaintiff has presented no evidence that there was any relationship between her taking FMLA leave and her termination. Plaintiff conceded at her deposition that her claim of a causal link is founded on her own speculation. Further, as discussed above, Plaintiff was aware of the slowdown in Defendant's business prior to taking FMLA leave. Pl. Dep. at 362-63; *see also Helfrich v. Lehigh Valley Hosp.*, 2005 WL 670299, at * 20 (E.D. Pa. Mar.18, 2005) (an employer expressing concern about a problem prior to the time the employee engages in a protected activity weighs against recognizing a causal connection). Accordingly, summary judgment is appropriate as to Plaintiff's FMLA retaliation claim on this ground alone.

Summary judgment as to this claim is also appropriate because Plaintiff has presented no argument that Defendant's decision to eliminate Plaintiff's position was pretextual. "To defeat summary judgment when the defendant answers the plaintiff's *prima facie* case with legitimate, non-discriminatory reasons for its action, the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either: (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes v. Perskie*, 32 F.3d 759, 764-65 (3d Cir. 1994). Because Plaintiff has pointed to no evidence other than her own speculation that the reason she was terminated was pretextual, summary judgment on Plaintiff's FMLA retaliation claim is appropriate on this ground as well.

## IV. CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment is granted, and

Plaintiff's Complaint will be dismissed.

An appropriate Order follows.

BY THE COURT:

 /s/ Lynne A. Sitarski
LYNNE A. SITARSKI
UNITED STATES MAGISTRATE JUDGE